UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| KEVIN MONAGHAN, an individual, | CV 13-00646 ABC (PLAx) |
| Plaintiffs, | ORDER RE: PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| TELECOM ITALIA SPARKLE OF NORTH AMERICA, INC., a New York Corporation | |
| Defendant. | |

Pending before the Court is Plaintiff Kevin Monaghan's ("Plaintiff") Motion for Summary Judgment and/or Adjudication of Liability ("Motion," docket no. 22) filed on June 14, 2013.  Defendant Telecom Italia Sparkle of North America, Inc. ("Defendant") filed an Opposition, and Plaintiff filed a Reply.  The parties appeared before the Court on July 22, 2013.  The Court **GRANTS** in part and **DENIES** in part the Motion, as follows.

## I.   BACKGROUND

Plaintiff Kevin Monaghan ("Plaintiff") has asserted seven employment-related claims against his former employer Defendant Telecom Italia Sparkle of North America, Inc. ("Defendant"). Plaintiff seeks unpaid wages and statutory penalties.

Plaintiff moves for summary judgment and/or adjudication against certain of Defendant's affirmative defenses, and for summary adjudication of liability as to all of his claims, and for damages and/or penalties as to some of his claims.   Defendant concedes certain of Plaintiff's arguments and opposes the others.

## II.   UNDISPUTED FACTS[1]

***Basic Facts Concerning Plaintiff's Relationship with Defendant and Statute of Limitations***

1.   Plaintiff began working for Defendant on or about October 25, 2010.   SUF 2.

2.   Defendant terminated Plaintiff's employment on June 7, 2012.   SUF 1.

3.   Plaintiff filed this lawsuit on January 30, 2013.   SUF 3.

***Facts Relating to Claim for Violation of Labor Code § 226.8 – Willful Misclassification (Fourth Cause of Action)***

4.   Defendant admits that it misclassified Plaintiff as an independent contractor through his employment.   SUF 7.

5.   Defendant's former President Roberto Migliozzi made the decision to classify Plaintiff as an independent contractor and he did so

---

[1]   These Facts are taken from Plaintiff's Statement of Undisputed Facts ("SUF").

2

intentionally.  SUF 27.

6.   Defendant's Human Resources Manager Vincent Suppa learned in March 2012 that Defendant misclassified Plaintiff.  SUF 28.

7.   Suppa, the Human Resources Manager, agreed in Mach 2012 that Defendant had misclassified Plaintiff.  SUF 29.

8.   Plaintiff and Defendant began to renegotiate their relationship and it appears that they tentatively agreed that Plaintiff would remain an independent contractor until November 2012, and thereafter he would be made an employee.  Monaghan Depo. 306:13-307:14.

9.   Defendant paid Plaintiff as an independent contractor until he was terminated in June 2012.  SUF 30.

***Facts Relating to Claim for Violation of Labor Code § 201 – Failure to Pay Wages Upon Termination (First Cause of Action)***

10.  At deposition, Migliozzi, Rubino, and Suppa testified that Defendant's employees are entitled to the following benefits: vacation days, personal days, holidays, sick days, health and dental insurance benefits, severance pay, and 401k retirement benefits.  SUF 8-11.

11.  Plaintiff paid FICA taxes that Defendant should have and that Plaintiff should be reimbursed that amount.  SUF 12.

12.  Defendant also earned "canvass pay" of 7,100 euro for the year 2011.  Defendant's witnesses admitted that if Defendant failed to pay Plaintiff "canvass pay" based upon a conversion from euros to dollars, it owes Plaintiff the difference.  SUF 13.

13.  Defendant failed to convert the amount of Plaintiff's canvass pay from euros to dollars and therefore underpaid him.  SUF 14.

14.  The relationship between Plaintiff and Defendant was governed by the October 25, 2010 Sales Agent Agreement ("Agreement").  See Pl.'s Exh. 1.

15.  Section 6(A) – entitled "Remuneration" – of the Agreement states that Defendant shall pay Plaintiff "base compensation and a commission based on the provisions of Annex 1."  Section 6(A) refers to the "commission" only as "commission." SUF 1; Agreement 6(A).

16.  Annex 1 describes the commissions as "paid on actual collection from Customers."  Id.  However, the Agreement does not describe how these payments are to be calculated.  Id.

**Facts Relating to Claim for Violation of Labor Code § 226 – Failure to Provide Wage Statements (Third Cause of Action)**

17.  Defendant admitted that it violated Labor Code § 226 by failing to provide wage statements and that it owes Plaintiff a penalty of $4,000.  Defendant has not paid this penalty.  SUF 24, 25; Exh. 13, RFA 9 & 10.

**Facts Relating to Claim Under Labor Code § 2698 et seq. – Private Attorneys General Act of 2004 (Seventh Cause of Action)**

18.  In or about November 16, 2012, Plaintiff provided the Labor and Workforce Development Agency with Notice of the alleged PAGA violations via certified mail.  The Agency did not respond to Plaintiff's letter within 33 days.  SUF 83, 87.

19.  Plaintiff incurred a $12.00 wire transfer fee assessed by the bank each time he was paid by Defendant (semi-monthly).  Defendant has not reimbursed Plaintiff for this amount.  SUF 84.

20.  On August 13, 2012, Plaintiff asked Defendant to provide him with

4

1          a copy of his personnel file pursuant to Labor Code § 1198.5, and

2          to provide him with any instrument that he signed relating to the

3          obtainment or holding of his employment with Defendant pursuant

4          to Labor Code § 432.  SUF 85.

5    21.  Defendant failed to provide any of these requested documents

6          prior to formal discovery in this matter.  SUF 86.

7    22.  As a result of his termination from Defendant, Plaintiff has lost

8          earnings and has not yet obtained new employment.  SUF 32.

9

10        The sequence of events recounted by Plaintiff's SUF 31-82,

11   pertaining to Plaintiff's claims for wrongful termination in violation

12   of public policy (Fifth Cause of Action) and for violation of Labor

13   Code § 1102.5 (Sixth Cause of Action) are largely – although not

14   entirely – undisputed.  However, as discussed in more detail below,

15   Defendant has proffered just enough evidence that it had a legitimate

16   reason for terminating Plaintiff to defeat summary judgment.  As such,

17   the Court finds it unnecessary to recount this extensive set of facts.

18

19                        **III.   LEGAL STANDARD**

20        "The court shall grant summary judgment if the movant shows that

21   there is no genuine dispute as to any material fact and the movant is

22   entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The

23   moving party has the burden of demonstrating the absence of a genuine

24   issue of fact for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S.

25   242, 256 (1986).

26        Once the moving party satisfies its initial burden, the adverse

27   party must set forth specific facts showing that there is a genuine

28   issue for trial.  S. Cal. Gas Co. V. City of Santa Ana, 336 F.3d 885,

1  888 (9th Cir. 2003) ("[The non-moving party] can defeat summary

2  judgment by demonstrating the evidence, taken as a whole, could lead a

3  rational trier of fact to find in its favor.") (citations omitted).

4       Both the moving party and the adverse party must support their

5  factual positions by "citing to particular parts of materials in the

6  record . . . or . . . showing that the materials cited do not

7  establish the absence or presence of a genuine dispute, or that an

8  adverse party cannot product admissible evidence to support the fact."

9  Fed. R. Civ. P. 56(c)(1).

10      An issue of fact is genuine if it reasonably can be resolved in

11  favor of either party.  Anderson, 477 U.S. at 250-51.  "[A] district

12  court is not entitled to weigh the evidence and resolve disputed

13  underlying factual issues."  Chevron Corp. v. Pennzoil Co., 974 F.2d

14  1156, 1161 (9th Cir. 1992).  Rather, "the inferences to be drawn from

15  the underlying fact. . . must be viewed in the light most favorable to

16  the party opposing the motion."  United States v. Diebold, Inc., 369

17  U.S. 654, 655 (1962).

18      However, the court must view the evidence presented "through the

19  prism of the substantive evidentiary burden."  S. Cal. Gas Co., 336

20  F.3d at 254.  "[M]ere disagreement or the bald assertion that a

21  genuine issue of material fact exists" does not preclude summary

22  judgment.  Harper v. Wallingford, 877 F.2d 728, 731 (9th Cir. 1989).

23  The "existence of some alleged factual dispute between the parties

24  will not defeat an otherwise properly supported summary judgment

25  motion; the requirement is that there be no genuine issue of material

26  fact."  Anderson, 477 U.S. at 247-48 (emphasis in original).  "The

27  mere existence of a scintilla of evidence in support of the

28  [non-movant's] position will be insufficient; there must be evidence

1   on which the jury . . . could find by a preponderance of the evidence

2   that the [non-movant] is entitled to a verdict . . . ." <u>Anderson</u>, 477

3   U.S. at 252.  The "opponent must do more than simply show there is

4   some metaphysical doubt as to the material facts." <u>Matsushita Elec.</u>

5   <u>Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).

6

7                          **IV.   DISCUSSION**

8   **A.   Affirmative Defenses**

9        **1.   Statute of Limitations**

10        Defendant's first affirmative defense is that "[e]ach and every

11   cause of action of the complaint is barred by all applicable statutes

12   of limitations."  Answer 5:22-25.

13        There appear to be two statutes of limitations that apply to most

14   of Plaintiff's claims.  First, the statute of limitations with respect

15   to wage claims and the tagalong claim for the statutory waiting-time

16   penalty is three years.  <u>Murphy v. Kenneth Cole Prods., Inc.</u>, 40 Cal.

17   4th 1094, 1102, 155 P.3d 284, 289 (2007) ("A three-year statute of

18   limitations applies to [wage claims."); Cal. Code Civ. Proc. § 338(a).

19   Second, the statute of limitations with respect to claims for

20   penalties is one year.  <u>Murphy</u>, supra, at 1102 (so stating);  Cal.

21   Code Civ. Proc. § 340(a).

22        Defendant does not respond to Plaintiff's contention that his

23   claims for wages are not barred by the three year statute of

24   limitations.  Indeed, Plaintiff filed suit well within three years

25   after the beginning of his employment with Defendant, so all of his

26   wage claims and his claim for the statutory waiting time penalty are

27   necessarily timely.

28        Because Plaintiff filed suit on January 30, 2013, Plaintiff may

recover penalties for violations that occurred within the one year

period prior to that date, that is, for violations that Defendant

committed between January 29, 2012 and January 30, 2013.  To the

extent the one year period was tolled during the pendency of

Plaintiff's claim with the Labor Commissioner, see Reply 2:14-17, then

the statutory period is extended to conduct before January 29, 2012.

In any event, Defendant committed violations going to all of

Plaintiff's claims for penalties after January 29, 2012, so none of

those claims is barred by the one-year statute of limitations.

However, as Defendant contends, and as Plaintiff appears to agree,

Plaintiff cannot recover penalties for violations that occurred prior

to the beginning of the statutory period beginning on January 29, 2012

(or earlier, to reflect tolling).

Defendant does not dispute that Plaintiff's claim for wrongful

termination in violation of public policy is timely, or that

Plaintiff's claim for retaliation in violation of Labor Code § 1102.5

is timely.  The Court therefore finds that these claims are not barred

by the statute of limitations.

Plaintiff's Motion that his claims are not barred by any statute

of limitations is therefore **GRANTED**, with the understanding that his

claims for penalties are subject to a one-year limitation.

**2.   Failure to State a Claim**

Defendant has withdrawn this affirmative defense.

**3.   Equitable Defenses**

Defendant asserts the following equitable defenses: laches and

estoppel, unclean hands, waiver, equity, and good faith (third, fifth,

sixth, eighth, and ninth affirmative defenses).  But equitable

defenses are not available as against a statutory duty.  See Ghory v.

Al-Lahham, 209 Cal. App. 3d 1487, 1492, 257 Cal. Rptr. 924 (Ct. App. 1989) (noting "[p]rinciples of equity cannot be used to avoid a statutory mandate," and rejecting defendant's argument that his failure to pay employee overtime compensation was consistent with the parties' employment agreement and that therefore equitable principles preclude employee's recovery of additional pay).

Although equity cannot absolve a party of a statutorily-imposed liability, it does appear that equitable considerations may be taken into account for purposes of damages.  For example, although the United States Supreme Court has "rejected the unclean hands defense 'where a private suit serves important public purposes[,]' [that] does not mean. . . the employee's own misconduct is irrelevant to all the remedies otherwise available." McKennon v. Nashville Banner Pub. Co., 513 U.S. 352, 360-361 (1995).  Plaintiff claims he is entitled to employee benefits.  Defendant responds that Plaintiff bargained for and received a higher wage in lieu of employee benefits, and has supported this contention with evidence. See Def's Facts 5, 19-21.[2] As such, Defendant argues, were Plaintiff to receive employee benefits in addition to the extra pay he already received, he would obtain a "double benefit," a result that equity should not allow.  Under McKennon, this argument is available.  Accordingly, Defendant may assert equitable defenses against Plaintiff's claim for damages, and Plaintiff's motion for summary adjudication of this defense is **DENIED**.

### 4.  Reservation of Rights

Defendant has withdrawn this purported affirmative defense.

---

[2]  "Def's Fact" refers to the additional facts Defendant provided in its Statement of Genuine Issues. See docket no. 33 pp. 39-51.

**B.   Plaintiff's Claims**

   **1.   Violation of Labor Code § 201 – Failure to Pay Wages (First Cause of Action)**

Plaintiff seeks summary adjudication as to liability for this claim.  Plaintiff alleges that Defendant failed to pay him wages owed under California law.  Specifically, Plaintiff notes that under Cal. Labor Code § 201, if an employer discharges an employee, the wages earned and unpaid at the time of discharger are due and payable immediately.

Plaintiff contends – and Defendant admits – that Defendant misclassified Plaintiff as an independent contractor even though he was really an employee under California law.  Because Plaintiff was really an employee, Plaintiff contends that Defendant owes him payment for all of the employee benefits to which he was entitled for the entire duration of his employment with Defendant.  These benefits include personal and vacation days Plaintiff would have accrued; severance pay; and monies for insurance and retirement benefits Plaintiff would have had.  Plaintiff also alleges that he is entitled to reimbursement for transportation costs and wire transfer fees. Plaintiff also contends that he made FICA payments that Defendant should have made and seeks reimbursement for these amounts.  Finally, Plaintiff contends that Defendant owes him unpaid commissions: first, that Defendant underpaid his year 2011 canvass bonus, and second, that Defendant has failed to pay him ongoing commissions.

Defendant admits that it misclassified Plaintiff as an independent contractor throughout his employment and that it should have classified him as an employee.  Fact 4.   However, Defendant contends that this does not necessarily mean Plaintiff is entitled to

all of the wages he is now claiming.

### a.   Benefits

Defendant's managers Rubino and Suppa testified that had Plaintiff been treated appropriately as an employee, he would have been entitled to all of the employee benefits Plaintiff identifies. See Fact 10.  However, Defendant argues that Plaintiff negotiated for and received additional compensation in lieu of benefits, and has pointed to some evidence supporting this position.  See Def's Facts 5, 19-21.  As such, Defendant argues, Plaintiff already received compensation for all of the benefits he did not receive.  Viewing the evidence in the light most favorable to the non-movant, the Court finds a triable issue of fact as to whether Defendant owes Plaintiff additional compensation for employee benefits.  The Motion is **DENIED** as to this component of Plaintiff's wage claim.

### b.   Costs

In its Brief, Defendant does not dispute that Plaintiff is entitled to reimbursement for transportation costs and wire transfer fees he paid to receive his wages.  See also Fact 19.  The Court therefore finds that Plaintiff is entitled to reimbursement for transportation costs and wire transfer fees.  The Motion is **GRANTED** as to this component of Plaintiff's wage claim.

### c.   Taxes

Defendant's CFO admitted that because Plaintiff was misclassified as an independent contractor, Plaintiff paid his own social security or FICA tax, including the employer's half of FICA, and that Plaintiff should be reimbursed that amount.  Fact 11.  Thus, it is clear that as a result of his misclassification, Plaintiff paid certain taxes that Defendant owed, and that Plaintiff should recover the payments he

made.  However, the parties have not fully briefed the law on how Plaintiff should recover these monies: that is, whether Defendant should reimburse Plaintiff directly, or whether Defendant must issue proper employee W2 forms and pay the taxes it owes so Plaintiff can amend his past tax returns and seek reimbursement from the Government. The Court will not resolve this unbriefed issue – indeed, it should not have to – but it suffices to say that Plaintiff is entitled to recover these monies one way or the other.  The Court expects the parties to reach some agreement on this issue.  The Motion is **GRANTED** as to this component of Plaintiff's wage claim in that the Court finds that Defendant's misclassification of Plaintiff resulted in Plaintiff's paying FICA taxes that Defendant owed; however, the Court will not at this time determine the mechanics of reimbursing Plaintiff but instead expects the parties to resolve this accounting issue.

### d.   Unpaid Commissions, that is "Canvass Bonus"

An element of Plaintiff's compensation was a "canvass bonus" Fact 12.  Plaintiff earned a canvass bonus of 7,100 euro for 2011. Id. Defendant's witness admitted that if Defendant failed to pay Plaintiff the canvass pay based upon a conversion from euros to dollars, Defendant owes Plaintiff the difference.  Id.  Defendant failed to convert the canvass pay amount from euros to dollars and therefore underpaid Plaintiff.  Fact 13.  The Court therefore finds that Defendant owes Plaintiff the difference between 7,100 euro and $7,100 for his 2011 canvass bonus.  The parties should agree to the appropriate conversion rate.  The Motion is **GRANTED** as to this component of Plaintiff's wage claim.

### e.   Unpaid Ongoing Commissions

Plaintiff also contends that the Sales Agent Agreement entitles

him to the payment of "ongoing commissions," and that Defendant has failed to pay him ongoing commissions.  Under the Agreement, Plaintiff was entitled to monthly base pay and certain quarterly payments.  The crux of this dispute is whether the quarterly payments were "commissions" which may entitle Plaintiff to ongoing payments, or whether those payments were fixed quarterly bonuses.

The California Labor Code defines commissions as "compensation paid to any person for services rendered in the sale of such employer's property and services and based proportionately upon the amount or value thereof."  Labor Code § 204.1.  Although the section makes reference to vehicle sales, "the statute's definition of 'commission' is more generally applicable.  Ramirez v. Yosemite Water Co., Inc., 20 Cal. 4th 785, 802 (1999).  "[T]he Supreme Court defined two essential requirements for finding that a compensation scheme involves commissions: (1) that the employees are involved in selling a product or service, and (2) that the amount of compensation is 'a percent of the price of the product or service.' "  Harris v. Investor's Business Daily, Inc., 138 Cal. App. 4th 28, 37 (2006) (citing Ramirez at 802.)

Based on the evidence in the record, whether the quarterly payments were commissions or fixed bonuses is a triable issue.  To be sure, the Agreement consistently refers to these payments as "commissions."  However, as noted above, "commission" has a specific meaning under California law, so whether these payments were actually "commissions" cannot be determined solely by looking at the label the parties' Agreement uses.  Rather, whether these payments were in fact "commissions," or whether Plaintiff could have reasonably understood them to be "commissions," depends at least partly on whether the

Agreement did in fact structure them as commissions under California law.  Neither the Agreement nor its Annex 1 specify how these quarterly payments are to be calculated – that is, whether they were fixed quarterly payments Plaintiff earned upon achieving a sales target, or whether they were calculated as a percentage of receipts from the sales Plaintiff procured.  Defendants claims that these quarterly payments were a bonus, were a fixed amount, and were not porportionate to Plaintiff's sales, but the evidence Defendant cites for this proposition does not support it.  See Def's Fact 15. Plaintiff attempted to testify that this quarterly compensation was based on a proportion of his net revenues, but his testimony is unclear at best.  See Monaghan Depo. 160:16-162:22.  As such, whether the Agreement entitled Plaintiff to "commissions" within the meaning of California law cannot be summarily adjudicated.  The Motion is **DENIED** as to this component of Plaintiff's wage claim.

> **f.    Whether Unpaid Wages Were Covered By Defendant's Alleged Overpayment of Wages Upon Plaintiff's Termination**

Defendant argues that although Plaintiff's Agreement with Defendant terminated on June 7 (or 12) 2012, it still paid Plaintiff his entire monthly payment for June 2012, rather than a prorated amount, and that it also paid Plaintiff his entire quarterly payment for the second quarter of 2012 even though Plaintiff had not met his quota for the quarter and even though the quarter would not be completed until the end of June.  The evidence Defendant cites does support this argument.  See Def's Facts 29, 32.  As such, Defendant contends that it paid Plaintiff more than he was due.  The Court finds that this creates a triable issue as to whether Defendant in fact owes Plaintiff additional wages, even if Defendant failed to pay those

wages during the course of Plaintiff's employment.   The Motion is **DENIED** as to this component of Plaintiff's wage claim.

### g.   Waiting Time Penalty

Plaintiff contends that he is entitled to waiting time penalties under Labor Code § 203, which provides that if an employer willfully fails to pay "without abatement or reduction, in accordance with sections 201, 201.5, and 202, any wages of any employee who is discharged or who quits, the wages of such employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced."

The purpose of § 203 is to ensure the prompt payment of wages. McCoy v. Superior Court, 157 Cal. App. 4th 225, 229 (2007). "Willful," as used in § 203, means that an employer has intentionally failed or refused to perform an act which was required to be done. Barnhill v. Robert Saunders & Co., 125 Cal. App. 3d 1, 7-8 (1981). "[T]he employer's refusal to pay need not be based on a deliberate evil purpose to defraud workmen of wages which the employer knows to be due." Barnhill, 125 Cal. App. 3d at 7.

As noted above, whether Defendant has failed to pay Plaintiff wages due upon his termination is a triable issue of fact.   Thus, the Court cannot determine whether the waiting time penalty is applicable. The Motion is **DENIED** as to this component of Plaintiff's wage claim.

### 2.   Violation of Cal. Bus. & Profs. Code § 17200 – Unfair Business Practices (Second Cause of Action)

Plaintiff seeks summary adjudication as to liability for this claim.   Plaintiff's § 17200 claim for unfair business practices is premised on Defendant's alleged violations of the Labor Code.   Indeed, violations of the Labor Code are a basis for a § 17200 claim.   See,

e.g., People v. Los Angeles Palm, Inc., 121 Cal. App. 3d 25, 33 (1981) (crediting tips of restaurant employees against their minimum wage violates both Labor Code § 351 and Bus. & Profs. Code § 17200).  The Court thus rejects Defendant's legal arguments that labor code violations cannot support a § 17200 claim and that Plaintiff cannot bring such a claim on his own behalf.

Defendant has admitted that it violated Labor Code § 226 by not issuing wage statements.  Facts 5, 17.  Because this is a legitimate basis for a § 17200 claim, the Court finds that Defendant is liable under § 17200 for this violation.

However, the portions of Plaintiff's § 17200 claim that rely on his claims that Defendant willfully misclassified him and has failed to pay wages are subject to disputed issues of fact, as noted above. Thus, the Court cannot adjudicate Defendant's liability for the willful misclassification and unpaid wages component of the § 17200 claim.  The Motion is **GRANTED** as to the Labor Code § 226 basis for § 17200 liability, but is otherwise **DENIED**.

### 3.   Violation of Labor Code § 226 – Failure to Provide Wage Statements (Third Cause of Action)

Plaintiff seeks summary adjudication as to both liability and damages for this claim.  California Labor Code § 226(a) requires employers to provide employees, each pay period, with an itemized statement that contains specific information.  An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with may recover an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.  Labor Code § 226(e).  An employee is deemed to suffer injury if the employer fails to provide a wage statement or if

16

the employer fails to provide accurate and complete information. Labor Code § 226(e)(2)(A), (B).

Here, Defendant admitted that it violated § 226 and owes the maximum penalty of $4,000.00.  <u>See</u> Fact 17.  As a result, there is no disputed issue of fact as to this claim.  The Court therefore finds that Defendant violated § 226.8 and owes Plaintiff the maximum penalty of $4,000.  The Motion is **GRANTED** as to Plaintiff's claim for violation of Labor Code § 226.  Determination of the amount of attorneys' fees and costs is premature.

**4.    Violation of Labor Code § 226.8 – Misclassification (Fourth Cause of Action)**

Plaintiff seeks summary adjudication as to both liability and damages for this claim.  Pursuant to Labor Code § 226.8, it is unlawful for any person or employer to engage in the willful misclassification of an individual as an independent contractor. Labor Code § 226.8(a). "Willful misclassification" is defined to mean "avoiding employee status for an individual by voluntarily and knowingly misclassifying that individual as an independent contractor."  Labor Code § 226.8(g)(4).

The penalty for willfully misclassifying an employee as an independent contractor include a civil penalty of not less than five thousand dollars ($5,000.00) and not more than fifteen thousand dollars ($15,000.00) for each violation, in addition to any other penalties or fines permitted by law.  Labor Code § 226.8(c).  If an employer is found to have willfully misclassified an employee, the court must order the employer to publicize that fact and other information on its website or on its premises.  Lab. Code § 226.8(e).

Defendant admitted that it misclassified Plaintiff as an

independent contractor.  Fact 4.  Defendant's President Migliozzi
admitted that he intentionally classified Plaintiff as an independent
contractor, that is, that it was not an accident that Defendant
classified Plaintiff as an independent contractor.  Fact 5.
However, it is not clear that the misclassification was willful
because Plaintiff has not pointed to evidence showing that Defendant
knew it should not have classified Plaintiff as an independent
contractor.  Thus, although it is undisputed that Defendant
misclassified Plaintiff, it has not been shown that Defendant knew it
misclassified him at the time.  As such, whether Defendant willfully
misclassified Plaintiff when it hired him is a disputed issue.

Plaintiff argues that his misclassification was willful because
Defendant learned that it misclassified Plaintiff no later than March
29, 2012, yet Defendant continued to treat him as an independent
contractor until it terminated him in June 2012.  Facts 6, 7, 9.
However, Defendant has pointed to evidence suggesting that, after
Defendant learned it had misclassified Plaintiff, Defendant and
Plaintiff were re-negotiating his contract so that it would be
compliant with California law concerning employee classification, and
Plaintiff agreed with Defendant's proposal that he continue to work
for Defendant as an independent contractor until November 2012, when
he would become an employee.  Fact 9.  This evidence creates a triable
issue of fact as to Defendant's willfulness once it learned it had
misclassified Plaintiff.  The Motion is **DENIED** as to Plaintiff's claim
for violation of Labor Code § 226.8.

**5. Wrongful Termination in Violation of Public Policy (Fifth Cause of Action)**

Plaintiff seeks summary adjudication as to liability for this

claim.  To prove a claim for wrongful discharge in violation of public policy, a plaintiff must prove that (1) he was employed by the defendant, (2) the defendant discharged him, (3) an alleged violation of public policy was a motivating reason for the discharge, and (4) the discharge caused him harm.  Jud. Council of Cal. Civ. Jury Instns. (2004), No. 2430; see BAJI Nos. 10.06, 10.41, 10.42 & 10.43; Haney v. Aramark Unif. Services, Inc., 17 Cal. Rptr. 3d 336, 348-49 (2004).

In addition, California courts use the three-step burden-shifting analysis in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) to evaluate a plaintiff's claim of wrongful termination in violation of public policy.  Loggins v. Kaiser Permanente International, 151 Cal. App. 4th 1102, 1108-1109 (2007).  "In the first stage, the 'plaintiff must show (1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action.'  If the employee successfully establishes these elements and thereby shows a prima facie case exists, the burden shifts to the employer to provide evidence that there was a legitimate, nonretaliatory reason for the adverse employment action.  If the employer produces evidence showing a legitimate reason for the adverse employment action, 'the presumption of retaliation [] drops out of the picture,' and the burden shifts back to the employee to provide 'substantial responsive evidence' that the employer's proffered reasons were untrue or pretextual."  Loggins, 151 Cal. App. 4th at 1109 (citations omitted).

Here, is it undisputed that Defendant employed Plaintiff and that Defendant fired Plaintiff.  Facts 1, 2.  Plaintiff has also presented unchallenged evidence that the discharge harmed him because he lost

his job and suffered lost earnings.  Fact 22.  The only issue is
whether an alleged violation of public policy was the reason Defendant
discharged Plaintiff.

Termination from employment is tortious when the termination
occurs in violation of a fundamental public policy.  Gantt v. Sentry
Insurance, 1 Cal.4th 1083, 1090 (1992).  A policy is "fundamental"
when it is "carefully tethered" to a policy "delineated in
constitutional or statutory provisions," id. at 1095, involves a duty
affecting the public at large, rather than one owed to or imposed
solely upon the parties to a dispute, id. at 1090, and is "well
established" and "sufficiently clear" to the employer at the time of
the discharge.  Id.  Wrongful termination cases typically arise when
an employer retaliates against an employee for refusing to violate a
statute, performing a statutory obligation, exercising a statutory
right, or reporting an alleged violation of a statute of public
importance.  Turner v. Anheuser-Busch, Inc., 7 Cal.4th 1238, 1256
(1994). However, an action for tortious discharge is not strictly
limited to these situations but will lie "wherever the basis of the
discharge contravenes a fundamental public policy." Soules v. Cadam,
Inc., 2 Cal.App.4th 390, 401 (1991).

Plaintiff contends that Defendant fired him because he complained
that Defendant misclassified him and because Plaintiff threatened to
take his claim for unpaid wages to the Labor Commissioner.
Terminating someone on those bases would clearly violate public
policy: properly classifying employees and paying their wages are
statutory obligations that concern the public at large, and they are
well-established duties.  Firing an employee for complaining about
labor violations would clearly violate public policy; in the language

of <u>McDonnell Douglas</u>, complaining about labor violations is a protected activity.  Defendant does not dispute this.  However, Defendant contends that it fired Plaintiff not because he complained about his misclassification and unpaid wages, but rather because Plaintiff had been a difficult employee to manage, he belittled and insulted other employees, he generally failed to respect his managers and colleagues, and he failed to respond to emails.  <u>See</u> Def's Facts 26, 28, 30, 33; Migliozzi Depo. 119:23-123:24 (Def's Exh. 6).

Plaintiff's brief recites the timeline of his complaints to, and interactions with, Defendant's managers concerning his misclassification and his claim for unpaid wages; these interactions spanned from about March 29, 2012, when he emailed Human Resources Manager Suppa to complain that he was being misclassified, to May 31, when Plaintiff informed Suppa that he intended to file a wage claim for unpaid commissions and reminded him about the misclassification. <u>See</u> Pl's Brief 17:27-19:5.  Migliozzi decided to terminate Plaintiff in late May 2012, and sent him a termination notice on June 5, 2012. As noted in the Facts section of this Order, most of the fifty or so facts Plaintiff sets forth surrounding his interactions with Defendant's managers in this period are, in significant part, undisputed.  The events Plaintiff recounts certainly give rise to an inference that Defendant terminated him for complaining about his misclassification and allegedly unpaid wages.

However, Defendant responds that it fired Plaintiff for the several legitimate, non-retaliatory reasons stated above.  <u>See</u> Defendant's Responses to Plaintiff's Facts 31-82; Def's Facts 26, 28, 30, 33; Migliozzi Depo. 119:23-123:24.  The Court has reviewed all of the evidence, and finds that Defendant has presented some evidence

tending to support its proffered legitimate, non-retaliatory reasons for discharging Defendant.  Plaintiff presents strong arguments that the reasons Defendant now proffers are pretextual.  However, viewing all of the evidence in the light most favorable to the non-moving party, considering that the evaluation of Defendant's evidence turns in part on the credibility of Defendant's witnesses, and with the McDonnell Douglass test in mind, the Court finds that whether Defendant terminated Plaintiff for complaining about his misclassification and unpaid wages is a classic triable issue of fact.[3]

The Motion is **DENIED** as to Plaintiff's claim for wrongful termination in violation of public policy.

### 6. Violation of Labor Code § 1102.5 – Retaliation (Sixth Cause of Action)

Plaintiff seeks summary adjudication as to liability for this claim.  Labor Code § 1102.5 states that an employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of state or federal statute, or in the violation of, or noncompliance with, a state or federal rule or regulation.  Labor Code § 1102.6 sets forth the burdens of proof for a § 1102.5 claim: "once it has been demonstrated by a preponderance of the evidence that an activity proscribed by Section 1102.5 was a contributing factor in the alleged prohibited action against the

---

[3]  Although the wrongful termination claim (along with, perhaps, the Labor Code § 1102.5 claim) appears to be Plaintiff's most important claim, Plaintiff did not point the Court to any arguably analogous cases, that is, cases in which a Plaintiff's motion for summary judgment was granted, or cases otherwise addressing the quantum of evidence a Plaintiff needs to make the required showing, as a matter of law, that a Defendant's proffered reasons are pretextual.

1  employee, the employer shall have the burden of proof to demonstrate
2  by clear and convincing evidence that the alleged action would have
3  occurred for legitimate, independent reasons even if the employee had
4  not engaged in activities protected by Section 1102.5."

5      Again, having reviewed all of the evidence with these burdens in
6  mind, the Court finds that whether Defendant violated § 1102.5 is a
7  triable issue of fact.  Stated differently, the Court cannot conclude,
8  after drawing all inferences in Defendant's favor, that Defendant
9  cannot meet its burden.  The Motion is **DENIED** as to Plaintiff's claim
10  for retaliation in violation of Labor Code § 1102.5.

11      **7.   Claim Under Labor Code § 2698 – the Private Attorneys
           General Act (Seventh Cause of Action)**

12      Plaintiff seeks adjudication as to liability with respect to this
13  claim.  Plaintiff claims that pursuant to Labor Code § 2698 et seq.,
14  the Private Attorneys General Act of 2004 ("PAGA"), he is entitled to
15  recover additional civil penalties on behalf of himself and the
16  California Labor and Workforce Development Agency ("LWDA") for
17  specific violations of the California Labor Code.  There is no dispute
18  that Plaintiff complied with the procedural requirements for his PAGA
19  claim.  See Opp'n 21:27 (so stating).

20      As set forth above, the Court has found that Defendant has
21  violated Labor Code § 226.  It is also undisputed that Defendant
22  violated Labor Code § 212, which requires the employer to pay an
23  employee without charge or discount.  Here, Defendant caused Plaintiff
24  to be "charged" to receive his pay when Plaintiff incurred a $12.00
25  wire transfer fee each time Defendant wire him his compensation.[4]  See

26

27      ───────────────────

28      [4]  Defendant's Opposition brief did not oppose this claim.  The
    Court deems Defendant's non-opposition to this claim as conceding it.

Fact 19.  It is also undisputed that Defendant failed to provide Plaintiff with documents he requested, in violation of Labor Code § 432.  See Facts 20, 21.  Under PAGA, Plaintiff is entitled to penalties for these violations as follows:

- For Defendant's violation of Labor Code § 226, failure to provide wage statements, Labor Code § 226.3 provides for a civil penalty of $250 per violation.  Plaintiff is entitled to this penalty.

- For Defendant's violation of Labor Code § 212, which requires the employer to pay an employee without charge or discount, Labor Code § 225.2 provides for a $100 penalty per violation.  Plaintiff is entitled to this penalty.

- For Defendant's violation of Labor Code § 432, failure to provide requested documents, Labor Code § 2269(f)(2) provides for a $100 penalty for this violation.  Plaintiff is entitled to this penalty.

Disputed facts preclude summary adjudication of Plaintiff's claim for penalties for the remaining violations.

The Motion is **GRANTED** as to Plaintiff's PAGA claim for penalties for violations of Labor Code §§ 226, 212, and 432.  The Motion is otherwise **DENIED** as to Plaintiff's PAGA claim.

**V.   CONCLUSION**

For the foregoing reasons, the Court hereby **GRANTS** Plaintiff's Motion as follows:

**GRANTS** Plaintiff's Motion that the statute of limitations does not bar any of his claims; however, a one-year statute of limitations applies to his claims for penalties.

**GRANTS** Plaintiff's Motion as to his claim for unpaid wages (violation of Labor Code § 201) as to transportation costs, wire transfer fees, taxes, and the unpaid portion of his "canvass bonus."

**GRANTS** Plaintiff's Motion as to his Bus. & Profs. Code § 17200 unfair business practices claim insofar as that claim is based on Defendant's violation of Labor Code § 226.

**GRANTS** Plaintiff's Motion as to his claim for violation of Labor Code § 226, and as to his request for a $4,000 penalty for that violation.

**GRANTS** Plaintiff's Motion as to the Private Attorneys General Act (Labor Code § 2698) as to Defendant's violation of Labor Code § 226 and the resulting civil penalty of $250 per violation; as to Defendant's violation of Labor Code § 212 and the resulting $100 penalty per violation; and as to Defendant's violation of Labor Code § 432, and the resulting $100 penalty.

Plaintiff's Motion is **DENIED** in all other respects.


**IT IS SO ORDERED.**

DATED:    July 22, 2013          _____
                                                **AUDREY B. COLLINS**
                                        **UNITED STATES DISTRICT JUDGE**